UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COATING EXCELLENCE INTERNATIONAL, LLC,

        Plaintiff,

  v.                                              Case No. 06-C-229

THILMANY LLC,

        Defendant.

---

**DECISION AND ORDER**

---

Defendant Thilmany LLC has moved for summary judgment, asserting that its products do not infringe any of the claims of the patent in suit, U.S. Patent No. 6,818,346. For the reasons given below, the motion will be denied.

**I. The '346 Patent and Accused Product**

Both Thilmany and Coating Excellence International ("CEI") produce ream wrappers. As the specification of the '346 patent explains:

> Reams (i.e., 500 sheets) of cut paper (8 ½ x 11, etc.) for copy machines, computers, printers and other applications are most commonly packaged for shipping, storage, and retail sale in ream wrappers made of various wrap materials. These wrap materials traditionally have been paper . . . plastic film, or a paper/solid plastic film combination. In addition to encasing reams of paper, the wrap materials protect the wrapped paper product from physical damage and moisture pickup during shipping and storage. The wrap materials also protect the wrapped product from physical damage during repeated handling and stocking on retail shelves.

(Franzini Aff., Ex. A, col. 1, 16-27.)

Among the advantages asserted by CEI's '346 patent are greater strength, an enhanced printing capability, and a less slippery surface, which aids the product in passing through manufacturers' packaging operations. (*Id.*, col. 2, 3-10.)

Claim 1 describes "[a] solid film ream wrapper" formed by laminating two layers or sheets of biaxially oriented polypropylene ("BOPP") or polyester film together with an adhesive.[1] A coating is applied on the surface of either of the sheets in a "recurring pattern, design, logo or other marking," altering the static coefficient of friction ("COF") "by at least 0.02." (*Id.,* col. 9, 30-45.) Increasing the static coefficient of friction means, in layman's terms, that the packaging will be less slippery (more force being required to overcome the friction), which is an advantage that makes the wrappers less likely to slip on manufacturers' packaging lines. (*Id.*, col. 1, 54-60.)

The rolls of laminated film ream wrapper that were manufactured for and sold by Thilmany incorporate a repeating discontinuous layer of coating that alters the static COF of the ream wrapper. In other words, Thilmany's product would clearly infringe CEI's patent if not for the limitation at issue in this case, which is that the coating must occur in a "recurring pattern, design, logo or other marking." Essentially, an individual Thilmany ream wrapper is covered almost completely by the coating: it is basically a large rectangle of product that is fully coated, except around the borders, by the static-COF-altering coating . (Hoffman Aff., Ex. B, C.) Examples of the final end-use product – an individual ream wrapper – have been provided for the court's inspection. These ream wrappers are roughly 14" x 21" sheets of a mostly clear plastic film and are printed with manufacturers' branding, logos, and product information. (Docket No. 32.) They appear to be for

---

[1]Though Thilmany asserts it does not infringe other of the patent's claims, CEI is only asserting infringement of Claims 1 and 6.

2

use with the sort of high-end paper that would be purchased in individual reams at an office supply store, as opposed to the more typical bulk copy paper that might be more familiar. The coating is not discernable to the naked eye.[2]

**II. Analysis**

Summary judgment is proper if the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Long Island Savings Bank, FSB v. United States,* 476 F.3d 917, 925 (Fed. Cir. 2007). "Where the parties do not dispute any relevant facts regarding the accused product . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *MyMail, Ltd. v. America Online, Inc.,* 476 F.3d 1372, 1378 (Fed. Cir. 2007) (quoting *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997)). At this stage, at least, the parties do not assert any factual disputes about the nature of the products claimed to infringe, and the question of infringement therefore turns on the court's claim interpretation.

Both sides recognize that the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (en banc) sets forth the rules governing a court's construction of disputed claim terms. It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).

---

[2]CEI filed a motion to strike the samples submitted by Thilmany on the grounds that they had not been authenticated and were misleading. In response, CEI filed an affidavit that properly authenticates the samples. For this reason and because I do not find the samples misleading, CEI's motion to strike (doc. # 34) is denied.

3

The terms of a patent claim are to be given their ordinary and customary meaning to a person skilled in the art at the time of the patent application. *Id.* A "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. Thus, in determining the ordinary and customary meaning of claim terms, the court may look to the "words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence." *Id.* at 1312 (quoting *Brown v. 3M,* 265 F.3d 1349, 1352 (Fed. Cir. 2001)). Claim terms are not to be read as if a dictionary definition is dispositive, because that would focus "the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. In sum, the claim terms at issue in this case are to be read in the context of the entire patent and the other intrinsic evidence, such as the prosecution history, and, where applicable, any extrinsic evidence that might be of interpretive assistance.

Two aspects of claim 1 are at issue. First, CEI argues that "a solid film ream wrapper" means a *continuous* sheet of film ream wrapper, whereas Thilmany believes instead that the claim describes only a single piece of wrap material that is wrapped around a ream of paper. Second, Thilmany argues that the "recurring pattern, design, logo or other marking" must have a decorative effect, while CEI believes that such a requirement is not supported by the claim's language or the specification. Essentially, Thilmany argues that its coating is not a "recurring" one, but even if it recurs, it is not a pattern, design, logo or other marking.

**1. Continuous or Single Wrapper**

Claim 1 describes "[a] solid film ream wrapper" with a coating having a "recurring pattern, design, logo, or other marking on one side." (*Id.* col. 9, 30; 42-43.) Before construing the disputed

4

language, it may be helpful to frame the context of the dispute. Essentially, the dispute over whether a pattern "recurs" turns on whether one looks at a single wrapper or a continuous roll. By analogy, if we looked at a single dollar bill, we would recognize that the portrait of George Washington appears only once on the bill. Because there is only one George Washington on each bill, we would not say that the portraits constitute a "recurring" pattern on each dollar. In contrast, if we visited the Bureau of Printing and Engraving and viewed the bills on the printing press before they were cut, it is possible to envision not a group of distinct dollar bills but a roll of paper with a *recurring* design of George Washington portraits.

In our case, Thilmany notes that its individual wrappers contain only a single rectangle of coating, and therefore that rectangle of coating is not a "recurring" pattern. CEI argues, however, that its patent applies not to individual wrappers but to an entire continuous roll of wrappers. When we view a continuous roll of Thilmany's wrappers, rather than each individual one, we see that the rectangular pattern of coating recurs throughout the roll, even though it may be found only once on each final product.

With that context in mind, I will turn to the claim itself. The claim describes "a solid film ream wrapper." (*Id.* col. 9, 30.) Thilmany argues that this describes "a" single ream wrapper that wraps a single 500-sheet ream of paper – i.e., the final product that reaches the consumer, as in the examples it has provided the court. Of course Thilmany is correct that "a" wrapper could describe a single ream wrapper; this follows from a common use of the article "a," and is in fact how the specification describes the final product: "Reams . . . are most commonly packaged for shipping, storage, and retail sale in ream wrappers made of various wrap materials." (*Id.*, col. 1, 16-19.)

5

Thus, it is not surprising that CEI's own witnesses would concede that, in some cases, "a" ream wrapper means the final wrapper that wraps a ream of paper.

CEI does not dispute that a ream wrapper can mean a single, discrete wrapper for a ream of paper. It argues, however, that its patent is not limited to describing a single wrapper with a recurring pattern; it describes, instead, a *continuous* sheet of film ream wrapper. I agree with CEI's reading and conclude that Thilmany's interpretation improperly limits the claim in a fashion not warranted by the patent itself. Several reasons suggest themselves.

What first stands out is that none of the patent's several illustrations depict a single ream wrapper. Instead, they all portray the wrapping *material,* either as it is being pressed through nip rollers (essentially a smoothing press), or in what appears to be a sheet form. In other words, there is no picture of a specific final product that could be described as "a" ream wrapper. Although drawings are not to be used to limit or expand a patent beyond its claims, the claims are to be interpreted in light of the entire patent, including the drawings. For instance, in *Insituform Technologies, Inc. v. Cat Contracting, Inc.,* the Federal Circuit construed the terms "a cup" and "the cup" as singular when "neither the specification nor the drawings disclose[d] more than one cup." 99 F.3d 1098, 1105-06 (Fed. Cir. 1996). Here, the opposite inference could be made: because neither the drawings nor specification describe the invention in the singular form pressed by Thilmany, limiting the claims in that fashion would seem unwarranted. Though I do not believe the drawings to be dispositive of the issue, the omission lends support to CEI's argument that the claim is not limited to a single ream wrapper.

More importantly, the language of the patent itself makes clear that what's important is not a single implementation of the wrapper but the *material* that can be used for wrapping. A court, in

6

construing a term, may look to the "words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence." *Phillips,* 415 F.3d at 1312 (quoting *Brown v. 3M,* 265 F.3d 1349, 1352 (Fed. Cir. 2001)). While in some cases the specification does use the term "wrapper" to describe the single end-use wrapper (in the sense Thilmany proposes), in other places it is clear that "wrapper" means a continuous sheet of wrapping material. For instance, the specification describes the method for making "a solid plastic film ream wrapper," in which the "layers pass through the nip rollers, forming the laminated solid plastic film ream wrapper." (Franzini Aff., Ex. A, col. 6, 17-18; 30-32; 40-41.) What is described here is not a single ream wrapper, but "a . . . wrapper" that is a sheet of continuous material capable of being fed through rollers. Because the patent uses the term to mean both a single wrapper as well as a continuous wrapping material, I find little basis to narrow the claim in the fashion Thilmany suggests.

Finally, Thilmany has not explained why its proposed construction would be a sensible reading of the claim as a whole. In particular, it has not squared its interpretation with the term "recurring." The specification describes the coating as being in a "recurring pattern or design, such as a logo or other marking, rather than flood-coated over the entire surface of the film." (*Id.* col. 6, 58-61; col. 7, 7-9.) The salient distinction drawn here (as elaborated more fully below) is between some kind of distinct, incomplete, coating versus a completely covered ("flood-coated") surface. That distinction would survive regardless of whether an individual wrapper had a single design or whether it had recurring designs; the point is that the wrapper is not to be completely coated. In short, it is unclear why "recurring" patterns *on a single wrapper* would add anything meaningful to the invention, or what purpose that distinction would serve. And when one considers

7

that the wrappers are manufactured and sold in continuous rolls, it makes much more sense to consider designs as "recurring" over the course of the continuous roll rather than on an individual ream wrapper.

In sum, the use of "recurring" makes the most sense if we consider the designs as recurring over the course of a continuous wrapper, not a single one. That is how the wrappers are referred to in the specification and how they are manufactured, and Thilmany has not explained what purpose would be served by a requirement that the patterns "recur" on a *single* wrapper. Accordingly, I will construe the term in the manner CEI suggests, which means Thilmany is not entitled to summary judgment on the basis that its coating is non-recurring.

**2. Pattern, Design, Logo or Other Marking**

Even if Thilmany's coating is a recurring one, Thilmany asserts that its coating does not constitute a "pattern," much less a "design," "logo" or "other marking." These are terms, Thilmany argues, which suggest the coating must have some sort of visible effect, whereas Thilmany's coating is not intended to be seen, and in fact is essentially invisible. CEI argues that the coating need not have any visible decorative properties; it is enough that the varnish layer is "discontinuous;" in other words, the coating does not completely cover the film. CEI finds support for its position in the specification, which describes the coating as being in a "recurring pattern or design, such as a logo or other marking, rather than flood-coated over the entire surface of the film." (*Id.* col. 6, 58-61; col. 7, 7-9.) Similarly, it describes the invention being coated "with a varnish or other material in a recurring pattern, design, logo, or other marking (rather than flood-coated across the entire surface)." (*Id.*, col. 7, 21-23.) Thus, the distinction CEI draws is between a fully coated surface and one where the surface is *incompletely* coated with a pattern or other marking.

8

The distinction also finds support in the prosecution history. The examiner had objected that the claims were obvious in light of a patent to Balloni. In response, CEI amended the claims and argued that:

> Amended Claim 1 requires that the first or second layer of the solid film ream wrapper be coating [sic] in a recurring pattern, design, logo or other marking on one side with a material that alters that static COF by at least .02. Balloni does not coat the film in any manner and transfers the silicon oil to both layers of film. Therefore, amended claim 1 is not obvious over Balloni.

(Franzini Aff., Ex. F at 7.) When the examiner ultimately accepted the amended claims, he noted: "[t]he applicants have … amended the claims to require a repeating pattern or image *(i.e. discontinuous layer)* wherein the pattern alters the COF measurement. … the coating in Balloni et al. was applied as a continuous coating and there is no obvious reason to apply it discontinuously (i.e. in the form of a pattern)." (Franzini Aff., Ex. G at 2) (italics added).

Thus, both the prosecution history and the patent itself support CEI's argument that the importance of the term is that it describes a discontinuous coating instead of a complete one. There is nothing in the evidence indicating that the coating must have a decorative effect in order to be a "pattern, design, logo, or other marking." Nothing in the specification suggests any additional usefulness arising from the fact that the pattern might be visible or have a decorative effect; in fact, the only advantage the patent mentions is that the coating will make the wrap less prone to slipping and easier to open.[3] Neither of these advantages has anything to do with decoration. And, although the terms "logo" or "other marking" would imply that the coating must be visible, there is nothing so limiting about a pattern or design. To return to the earlier example, the dollar bill contains

---

[3] My ruling at this stage does not address the validity of the patent in suit. As Thilmany seems to anticipate, the potential for validity problems increases as the claims are construed more broadly.

9

several designs or patterns that, for security reasons, are invisible to the untrained eye. Accordingly, I will decline to interpret the claim in the fashion Thilmany suggests. The phrase "pattern, design, logo, or other marking" needs no further elaboration apart from the clarification that the coating need not be visible or have a decorative effect.

In sum, because I cannot conclude as a matter of law that the accused products do not infringe the patent in suit, the motion for summary judgment is DENIED. The clerk is directed to place this matter on the court's calendar for further scheduling forthwith.

**SO ORDERED** this   24th   day of April, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
